FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF
AMERICA,
    *Plaintiff-Appellee*,

v.

EDWIN ISAAC MENDEZ,
AKA Carabina, AKA
Chino,
    *Defendant-Appellant.*

No. 21-50086

D.C. Nos.
2:19-cr-00117-ODW-16
2:19-cr-00117-ODW

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted February 8, 2022
Pasadena, California

Filed March 24, 2022

Before: Mary M. Schroeder, Richard C. Tallman, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Criminal Law

Affirming the district court's denial of a motion to dismiss a Second Superseding Indictment (SSI) charging Edwin Mendez with racketeering conspiracy under 18 U.S.C. § 1962(d), the panel held that the Juvenile Delinquency Act (JDA) does not preclude the government from prosecuting a person as an adult for a continuing conspiracy that includes both pre- and post-majority conduct after the court dismisses a JDA information charging that person with conspiracy based solely on pre-majority conduct.

The panel held that it had jurisdiction under the collateral order doctrine to hear this interlocutory appeal.

The panel addressed whether JDA jurisdiction had attached to preclude Mendez's prosecution as an adult given the government's failure to complete the procedure set forth in 18 U.S.C. § 5032 for transfer to adult prosecution and the absence of a judicial determination regarding transfer. The panel held that a defendant who continues to participate in a conspiracy after reaching majority ratifies his prior conduct in the conspiracy, such that the conspiracy carries over into his majority, and that in this situation, the JDA is inapplicable. The panel also held that, because Mendez allegedly continued to participate in the racketeering conspiracy on his eighteenth birthday and beyond, his racketeering conspiracy offense was not an act of juvenile

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

delinquency under the JDA. The panel concluded that the district court therefore has adult criminal jurisdiction over the majority-spanning RICO conspiracy offense charged in the SSI.

---

**COUNSEL**

Charles P. Diamond (argued), Law Offices of Charles P. Diamond, Los Angeles, California; Seth Fortin, Biola Macaulay, and Vanessa Guerrero, O'Melveny & Myers LLP, Los Angeles, California; for Defendant-Appellant.

Joanna M. Curtis (argued), Chief, Violent and Organized Crime Section; Bram M. Alden, Chief, Criminal Appeals Section; Tracy L. Wilkison, Acting United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

---

**OPINION**

TALLMAN, Circuit Judge:

Entry into adulthood is a significant milestone. It provides a new set of privileges and consequences, many life-changing. A person's eighteenth birthday also brings with it new legal considerations. We look at one of those in this criminal gang conspiracy case.

Edwin Mendez appeals the district court's order denying his motion to dismiss the Second Superseding Indictment charging him with one count of racketeering conspiracy under 18 U.S.C. § 1962(d). He stands accused of participating in the operation of the criminal street gang

Mara Salvatrucha (also known as MS-13) in Los Angeles, constituting a RICO enterprise which the grand jury charged operated through various acts including drug distribution, extortion, robbery, assault with intent to commit murder, kidnapping, and murder. The district court's interlocutory order rested on the conclusion that the Juvenile Delinquency Act ("JDA") did not bar Mendez's prosecution as an adult under the superseding indictment. Mendez argues that the district court erred because the government had previously charged him in a JDA criminal information for related acts, which the statute labels "act[s] of juvenile delinquency," including *inter alia* racketeering conspiracy. 18 U.S.C. §§ 5031, 5032. We must decide whether the JDA precludes the government from prosecuting a person as an adult for a continuing conspiracy that includes both pre- and post-majority conduct after the court dismisses a JDA information charging that person with conspiracy based solely on pre-majority conduct. We hold it does not and affirm.

I

The United States filed a seven-count juvenile information on March 29, 2019, charging Mendez—an alleged member of MS-13's Fulton clique in Los Angeles County—with acts of juvenile delinquency, including Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy under 18 U.S.C. § 1962(d), two counts of first-degree murder, violent crimes in aid of racketeering, and aiding and abetting.[1] According to the JDA information,

---

[1] We **GRANT** Defendant-Appellant's motion for judicial notice (Dkt. No. 12) and Plaintiff-Appellee's request for judicial notice (Dkt. No. 21) of the prior proceedings before the district court under the JDA. Although juvenile records are generally sealed, and Defendant-Appellant's exhibits were filed under seal, most of the allegations

these alleged acts of juvenile delinquency occurred prior to Mendez's eighteenth birthday on June 16, 2017. With respect to the RICO conspiracy charge, the information alleged the commission of 29 overt acts of juvenile delinquency in furtherance and to accomplish the objects of the RICO conspiracy, the last of which allegedly involved an illegal firearm transaction occurring on June 14, 2017, when Mendez was still a minor. All of these alleged crimes would have been violations of various provisions of Title 18 but for Mendez's age.

The government continued to investigate the MS-13 enterprise. In July 2019, a federal grand jury returned a Second Superseding Indictment ("SSI"), indicting a total of 22 defendants alleged to be MS-13 gang members from various cliques in Los Angeles. Mendez, then 20, was charged with one count under 18 U.S.C. § 1962(d). This adult RICO conspiracy charge covers both pre- and post-majority conduct. The SSI accuses Mendez—participating with other co-defendants and unindicted co-conspirators—of displaying gang signs, possessing weapons, and engaging in narcotics trafficking. While the JDA information had originally charged Mendez with two counts of first-degree murder and violent crimes in aid of racketeering as acts of juvenile delinquency, the SSI did not charge Mendez with those crimes.

On January 23, 2020, the government filed a motion to transfer Mendez for adult criminal prosecution on the

discussed in this opinion have been realleged in the SSI, a publicly available filing. Our opinion contains a generalized discussion of the JDA pleadings and proceedings only for context, procedural posture, and to explain the reasoning behind our decision. The orders sealing these documents are lifted to the extent necessary to permit these references.

charges in the JDA information.  But the government later determined that it would not proceed on the juvenile murder-related charges, only on the adult RICO conspiracy charged in the SSI.  So, on June 1, 2020, the government moved to dismiss the JDA information to "conserve government, judicial, and Criminal Justice Act resources."  Mendez objected.  But the district court dismissed the JDA case the next day without a hearing.

On January 19, 2021, Mendez moved to dismiss the SSI for lack of statutory jurisdiction over the sole charge as to him—RICO conspiracy under 18 U.S.C. § 1962(d).  The district court denied Mendez's motion on March 29, 2021, rejecting his argument that the government was required— once having decided to proceed under the JDA—to continue the juvenile proceedings against him.  The court further rejected Mendez's argument that the government could not prosecute him for the same offense conduct as an adult absent a formal JDA transfer proceeding in which the district court would decide whether Mendez would be tried as an adult.  Accordingly, the adult prosecution could go forward. Mendez timely filed a notice of interlocutory appeal.[2]

II

We must presume the facts in the SSI to be true for purposes of reviewing the district court's ruling on the

---

[2] Subsequently, on August 5, 2021, while this appeal was pending, the government filed a Third Superseding Indictment ("TSI") charging additional co-defendants and adding new allegations of Mendez's post-majority conduct.  We agree with the government that the TSI does not render this case moot because "deciding the appeal from the [SSI] . . . [could] affect the resolution of the government's case against the defendant under the [TSI]." *United States v. Scott*, 884 F.2d 1163, 1165 (9th Cir. 1989) (per curiam).

motion to dismiss. *See United States v. Fiander*, 547 F.3d 1036, 1041 n.3 (9th Cir. 2008). We review de novo the district court's denial of the motion to dismiss the indictment based on its interpretation of the JDA. *See United States v. Camez*, 839 F.3d 871, 872 (9th Cir. 2016).

## III

## A

We must first ensure our appellate jurisdiction. *See United States v. McIntosh*, 833 F.3d 1163, 1170 (9th Cir. 2016). The final judgment rule applies in direct criminal appeals. *See id.* Absent, for example, a claim of double jeopardy, a pretrial order denying a defendant's motion to dismiss is generally not immediately appealable. *See Abney v. United States*, 431 U.S. 651, 659, 662 (1977). However, the collateral order doctrine permits review of a "small class of decisions," including some non-final orders that do not terminate the underlying action. *United States v. Pace*, 201 F.3d 1116, 1119 (9th Cir. 2000). The order must: 1) conclusively determine the disputed question; 2) resolve an important issue completely separate from the merits of the action; and 3) be effectively unreviewable on appeal from a final judgment. *Id.*

The district court's denial of Mendez's motion to dismiss meets that standard. First, the district court's denial of Mendez's motion to dismiss conclusively determined that the JDA does not prevent Mendez's prosecution under the SSI. Second, whether the JDA applies to prohibit prosecution as an adult is a separate question from Mendez's criminal culpability for the racketeering conspiracy charge. Finally, the issue here is effectively unreviewable on appeal from a final judgment because Mendez's claimed statutory right not to be tried as an adult will be lost if not appealed

immediately.  *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989); *United States v. Gerald N.*, 900 F.2d 189, 190–91 (9th Cir. 1990) (per curiam) ("[T]he legal and practical value of the right to be tried as a juvenile would be destroyed without the concomitant right of immediate appeal.").  We therefore hold that we have interlocutory jurisdiction to hear this appeal.

## B

We must decide whether JDA jurisdiction had attached to preclude Mendez's prosecution as an adult given the government's failure to complete the transfer procedure set forth in 18 U.S.C. § 5032 and the absence of a judicial determination regarding transfer.  Mendez argues that the JDA "unambiguously bars" his prosecution under the SSI because by charging the RICO conspiracy offense as an "act of juvenile delinquency" in the JDA information, "the government triggered the JDA's mandatory procedural mechanism," which requires dismissal because the government dismissed the information without completing the transfer process and submitting the question to the district court.  But the government responds that because Mendez's alleged participation in the conspiracy continued beyond his eighteenth birthday, it was no longer an "act of juvenile delinquency" as defined by the JDA, and an act that is not one of "juvenile delinquency" is not subject to the JDA's transfer requirements.  We think the government has the better of the argument.

## 1

The JDA's purpose is to "remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation."  *United States v. Doe*, 94 F.3d 532, 536 (9th

Cir. 1996) (citation omitted); *see also Camez*, 839 F.3d at 873. The JDA "does not create a substantive offense with its own jurisdictional basis, but rather establishes a procedural mechanism for the treatment of juveniles who are already subject to federal jurisdiction because of the commission of acts cognizable under other federal criminal statutes." *Camez*, 839 F.3d at 873–74 (citation omitted). A successful JDA prosecution results in adjudication of a status as a juvenile delinquent, not conviction of a crime as an adult would suffer. *See United States v. Araiza-Valdez*, 713 F.2d 430, 432 (9th Cir. 1980) (per curiam).

To prosecute "an act of juvenile delinquency" in the federal criminal justice system, "the government must follow the certification procedures required by 18 U.S.C. § 5032." *United States v. Doe*, 170 F.3d 1162, 1165 (9th Cir. 1999). Certification is jurisdictional. *Id.* If the Attorney General, or his designee, makes the requisite certification, the United States "shall proceed by information . . . and no criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided [in the JDA]." 18 U.S.C. § 5032.[3]

The statutory definitions are critical. A *juvenile* is "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under [the JDA] for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." *Id.* § 5031. The defendant's age is determined at the time of indictment.

---

[3] The statute also includes a jeopardy provision: "Once a juvenile has entered a plea of guilty or the proceeding has reached the stage that evidence has begun to be taken with respect to a crime or an alleged act of juvenile delinquency subsequent criminal prosecution or juvenile proceedings based upon such alleged act of delinquency shall be barred." *Id.* The facts here do not meet either triggering event under the statute.

*Camez*, 839 F.3d at 874. *Juvenile delinquency* is "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult or a violation by such a person of section 922(x)." 18 U.S.C. § 5031.

"A juvenile who is alleged to have committed an act of juvenile delinquency . . . shall be proceeded against under [the JDA]," with limited exceptions, only one of which is relevant in this appeal. *Id.* § 5032. The JDA permits the government to initiate the transfer for adult prosecution of a juvenile who is 15 years or older and has allegedly committed an act which would constitute an adult felony for a crime of violence, or certain other narcotics and weapons crimes. *See id.* The court must find, "after hearing, such transfer would be in the interest of justice," considering the evidence and making record findings with respect to several specific statutory factors. *Id.* As explained above, the transfer process was never completed. Instead, the government elected to proceed on the SSI, and the district court dismissed the JDA information before any hearing in support of the transfer.

2

We begin our analysis with the pertinent definitions. Mendez was a "juvenile" under 18 U.S.C. § 5031 when the government first charged him by information at age 19 for the various acts of "juvenile delinquency" allegedly committed before his eighteenth birthday. *See Camez*, 839 F.3d at 874. And by filing the information, the government was undisputedly bound by the JDA's provisions—including the adult transfer protocol—for *those* alleged acts of juvenile delinquency. Therefore, the key to resolving this appeal is determining whether the racketeering conspiracy charged in the SSI was an "act of juvenile

delinquency" or was instead a majority-spanning criminal offense for which he may be tried and convicted as an adult.

The ratification doctrine answers the question presented in this case and our decision in *Camez* helps guide the analysis. *Camez* considered the evidentiary question whether the JDA barred consideration of pre-majority conduct as proof of substantive RICO crimes. *Id.* at 872–73. The government there indicted the defendant alleging pre- and post-majority conduct. *Id.* The defendant challenged his conviction only on the substantive RICO count, arguing that the district court erred in instructing the jury that it could consider his pre-majority conduct. *Id.* at 873. We affirmed, reasoning in part that analogy to the contract ratification doctrine supports the admissibility of pre-majority conduct. *Id.* at 876. As we explained, "a defendant may ratify his pre-eighteen participation in a conspiracy or other continuing crime by continued participation after attaining majority." *Id.* (cleaned up) (citing *United States v. Wong*, 40 F.3d 1347, 1366 (2d Cir. 1994)). We rejected the notion that Congress in enacting the JDA "intended to allow all persons effectively to start with a clean slate" on their eighteenth birthday. *Id.* To the contrary, "for continuing crimes alleged to have occurred both before and after the defendant turned 18 . . . adult prosecution is warranted." *Id.* at 874.

Mendez argues that *Camez* is inapposite because it does not address the JDA's criminal prosecution bar and transfer provision, *see* 18 U.S.C. § 5032, where JDA jurisdiction had already attached to an alleged act of juvenile delinquency. It is true that the government in *Camez* did not first pursue a juvenile action before bringing an adult prosecution. But the JDA transfer requirement applies only to acts of juvenile delinquency. Thus, we look to the nature of the offense itself. *See United States v. Delatorre*, 157 F.3d 1205, 1210

(10th Cir. 1998) (explaining that an offense *completed* by age 18 will constitute an act of juvenile delinquency under the JDA). And a majority-spanning conspiracy is simply not an act of juvenile delinquency.

To be sure, what Mendez describes as "the thin allegations of post-majority conduct" in the SSI might ultimately be insufficient to prove that Mendez ratified his pre-majority conduct. And thus, Mendez argues that the SSI does not actually allege a majority-spanning conspiracy. However, at this stage the SSI's facts are presumed true; the inquiry is not whether the United States can prove its case. *See United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993). On the merits, we conclude that Mendez's argument fails because the SSI alleges multiple post-majority instances of Mendez possessing drugs and weapons and flashing MS-13 gang signs with co-defendants and unindicted co-conspirators—all acts which, if proved, a reasonable jury could determine were intended by Mendez to achieve the goals of the enterprise conspiracy. *See, e.g.*, *Fiander*, 547 F.3d at 1041 (explaining a defendant need not commit the substantive offense to be guilty of RICO conspiracy; rather "it is sufficient that he knew about and agreed to facilitate the scheme" (cleaned up)).

Most of our sister circuits agree that the government may charge a majority-spanning conspiracy as an adult offense. *See Camez*, 839 F.3d at 875–77 (collecting cases from the First, Second, Sixth, Tenth, and Eleventh Circuits); *see also United States v. Guerrero*, 768 F.3d 351, 361–62 (5th Cir. 2014), *cert. denied*, 575 U.S. 916 (2015); *United States v. Doerr*, 886 F.2d 944, 969–70 (7th Cir. 1989). To illustrate, the government directs us to *United States v. Cruz*, 805 F.2d 1464, 1475–77 (11th Cir. 1986). *Cruz* addressed in part whether the federal district court had jurisdiction over one

defendant who was convicted of conspiracy to possess and distribute cocaine where he was indicted as an adult and was a juvenile at the time he entered into the conspiracy. *Id.* at 1475. The Eleventh Circuit held that "once sufficient evidence has been introduced that would allow a jury to reasonably conclude that the defendant's participation in a conspiracy continued after his eighteenth birthday, then he may be tried as an adult." *Id.* at 1476. The court explained that none of the JDA's provisions "are applicable in a trial involving one who is not a juvenile and has not committed an *act of juvenile delinquency*." *Id.* (emphasis added) (citing 18 U.S.C. § 5031); *accord United States v. Welch*, 15 F.3d 1202, 1211 (1st Cir. 1993).

The Second Circuit's decision in *Wong*, upon which *Camez* also relied, supports our analysis with respect to the JDA's applicability to continuing offenses like racketeering conspiracy. *See* 40 F.3d at 1365–68. *Wong* held that where the defendants began committing the RICO offenses charged in the indictment "while they were juveniles, but continued to do so after their eighteenth birthdays," the JDA did not apply "[b]ecause the RICO offenses were not 'committed by a [defendant] prior to his eighteenth birthday.'" *Id.* at 1365 (quoting 18 U.S.C. § 5031). Indeed, because "RICO conspiracy offenses are continuing crimes," the Second Circuit held that the district court properly exercised jurisdiction over the adult RICO conspiracy charges based on the defendants' post-18 conduct, notwithstanding their argument that the JDA barred their prosecution. *Id.* at 1366–67.

The Tenth Circuit also found *Wong* persuasive. *See Delatorre*, 157 F.3d at 1210. *Delatorre* held that because the government, invoking its prosecutorial discretion, charged a continuing, majoring-spanning RICO conspiracy, it "need

not comply with the JDA's provisions governing acts of juvenile delinquency." *Id.* (explaining that an offense *completed* by age 18 will constitute an act of juvenile delinquency under the JDA). In sum, we find our sister circuits' approaches to majority-spanning conspiracies persuasive. We hold that a defendant who continues to participate in a conspiracy after reaching majority ratifies his prior conduct in the conspiracy, such that the conspiracy carries over into his majority. In this situation, the JDA is inapplicable.

We also hold that, because Mendez allegedly continued to participate in the racketeering conspiracy on his eighteenth birthday and beyond, his racketeering conspiracy offense was not an act of juvenile delinquency under the JDA. *See* 18 U.S.C. §§ 5031, 5032. To be fair, there is no dispute that JDA jurisdiction attached to Mendez's alleged acts of juvenile delinquency such as the completed murders in furtherance of the pre-18 RICO conspiracy, *see id.* § 5032, as *those* offenses were complete before he turned 18. But at the moment he decided not to withdraw, but rather ratified his pre-majority conduct by continuing to participate in the conspiracy after his eighteenth birthday, the JDA's exclusive jurisdiction over the offense—and the required application of its transfer protocol—ceased. *Cf. Camez*, 839 F.3d at 876; *see also Delatorre*, 157 F.3d at 1210; *Wong*, 40 F.3d at 1366–67; *Cruz*, 805 F.2d at 1476. Consequently, the district court has adult criminal jurisdiction over the majority-spanning RICO conspiracy offense charged in the SSI.[4]

---

[4] Indeed, we have previously concluded that, under certain circumstances, the filing of a JDA information does not necessarily bar the government from proceeding against a defendant as an adult for the same conduct, even without a formal transfer hearing. *See United States*

Mendez relies on contrary language in *United States v. Smith* suggesting that "once the government invokes 18 U.S.C. § 5032, it may not in the future proceed against the defendant except in accordance with the terms of that provision." 851 F.2d 706, 709–10 (4th Cir. 1988). There, the Fourth Circuit held that the defendant's motion to dismiss the indictment should have been granted where the government had previously dismissed a JDA information against the defendant. *Id.*

But the problem with Mendez's argument is that the grand jury in *Smith* indicted the defendant, then 21, for the *same* completed substantive offenses charged in the prior JDA information the government dismissed before the indictment:  three counts of first-degree murder committed at age 15. *Id.* at 707–08. Here, unlike *Smith*, the SSI does not charge Mendez with the same completed substantive offenses—first-degree murder, violent crimes in aid of racketeering, and aiding and abetting—as the JDA information charged as acts of juvenile delinquency.

In contrast, the government maintains the Mendez indictment does not charge the same offense, and thus it was not required to proceed under § 5032. Given the continuing nature of the crime of conspiracy, as we explain above, and on these facts, we agree that is the correct view. *See Camez*, 839 F.3d at 876–77; *see also Cruz*, 805 F.2d at 1477; *Delatorre*, 157 F.3d at 1211 ("The Government may prosecute [the defendant] as an adult in accordance with the federal evidentiary and procedural rules so long as the

---

*v. HOS*, 696 F.3d 869, 870–72 (9th Cir. 2012) (holding that where the government continued its investigation and later learned the defendant was an adult when he committed the offenses, the adult criminal case could proceed).

Government establishes that [the defendant] participated in the continuing crimes with which he is charged beyond his eighteenth birthday.").

That the government previously filed the JDA information alleging Mendez violated 18 U.S.C. § 1962(d) is a distinction without a difference. Looking at the *offense*, *see Delatorre*, 157 F.3d at 1210, the one charged in the information was an act of juvenile delinquency. But the SSI alleges post-majority acts sufficient to support a majority-spanning § 1962(d) adult RICO conspiracy charge. Ultimately, whether Mendez ratified his conduct is a question left for the factfinder. *See Blinder*, 10 F.3d at 1471.

Because Mendez's participation in the conspiracy allegedly continued beyond his eighteenth birthday, it was no longer an act of juvenile delinquency under the JDA. Rather, the conduct became a continuing adult RICO conspiracy offense which began when he was a juvenile but continued when he allegedly engaged in additional acts in furtherance of the ongoing conspiracy after reaching the age of majority. The JDA does not shield Mendez from having to answer for this continuing criminal behavior as an adult.

IV

When a minor ratifies his pre-majority conduct by continuing to participate in an ongoing criminal conspiracy after his eighteenth birthday, the offense is not insulated by the JDA's procedural enclave.

The district court's order denying Mendez's motion to dismiss the superseding indictment is **AFFIRMED.**